# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSEPH L. DIEBOLD, JR., on behalf of the EXXONMOBIL SAVINGS PLAN, and all others similarly situated,<br><br>    Plaintiff,<br><br>        v.<br><br>NORTHERN TRUST INVESTMENTS, N.A., and THE NORTHERN TRUST COMPANY,<br><br>    Defendants. | No. 09 Civ. 1934<br><br>Hon. George W. Lindberg,<br>*Judge Presiding.* |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS

Michele Odorizzi
Caryn L. Jacobs
John J. Tharp, Jr.
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
(312) 782-0600

Dated: June 1, 2009

Defendants Northern Trust Investments, N.A. ("NTI") and The Northern Trust Company ("Northern Trust") submit this memorandum in support of their motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) for failure to state a claim and pursuant to Rule 12(b)(1) for lack of standing to represent the broad class alleged in the complaint.

## INTRODUCTION

Plaintiff is a participant in ExxonMobil's Savings Plan, which is a defined contribution plan for ExxonMobil employees. Complt., p.1 & ¶ 22. As a Plan participant, plaintiff had the right to choose among the investment alternatives made available by the ExxonMobil Plan trustees. Complt. ¶ 30. He alleges that he chose a single fund — the S&P 500 Fund managed by NTI — which engages in securities lending activity. Complt. ¶ 22, 31. As a result of the September 2008 meltdown of the financial markets, the S&P 500 Fund incurred certain losses from securities lending. Complt. ¶¶ 11, 22, 42, 44, 47. Plaintiff claims that he personally experienced losses in his own Plan account, although he does not say how much he lost. Complt. ¶ 22. In this lawsuit, plaintiff seeks to recover *all* of the securities lending losses suffered by both the ExxonMobil Plan and *all* ERISA plans that invested in either the S&P 500 Fund or any other NTI Collective Funds that engaged in securities lending. Complt., p. 1 & ¶¶ 18, 66-67.

Plaintiff alleges in Count I of his complaint that the securities lending losses were the result of imprudent investment decisions made by defendants. In Count II, plaintiff goes even further, claiming that the defendants were prohibited by ERISA from engaging in any securities lending activities at all or from being paid fees for the services they provided. As demonstrated below, Count I of the complaint should be dismissed because plaintiff offers nothing more than a claim of imprudence by hindsight to support his allegations of mismanagement. Under the Supreme Court's recent decisions in *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (U.S. May 18, 2009), these conclusory allegations are not nearly enough

1

to state a claim even under notice pleading rules.

Count II should also be dismissed. Plaintiff has failed to allege any facts to support his claim that the entire securities lending program was a prohibited transaction under ERISA. Moreover, as plaintiff acknowledges, Department of Labor regulations are specifically designed to allow ERISA plans to participate in precisely the kind of securities lending program offered by defendants. Plaintiff also alleges that Northern Trust's fees violated ERISA. But the very documents plaintiff relies upon demonstrate that those fees complied with Department of Labor regulations because plan trustees expressly approved the fees that NTI's affiliate, Northern Trust, charged as securities lending agent. Complt. ¶¶ 37-39; *see* Ex. A hereto.

In any event, even if plaintiff could state a claim on behalf of the ExxonMobil Plan for losses suffered by the Plan with respect to the S&P 500 Fund, that would not give him the right to represent hundreds of plans that invested in dozens of other lending funds. ERISA gives participants statutory standing to sue fiduciaries on behalf of their own plans. But nothing in ERISA creates standing to sue on behalf of *other* plans in which the plaintiff is *not* a participant. And basic principles of constitutional standing preclude plaintiff from suing on behalf of even the ExxonMobil Plan for losses suffered in lending funds in which he never invested.

**BACKGROUND**

This case involves Collective Funds that engage in securities lending activities. As their name suggests, Collective Funds are funds in which a variety of entities — many of which are pension and savings plans — pool their resources to invest in particular strategies. Complt. ¶¶ 4, 6. For example, the S&P 500 Fund in which plaintiff invested seeks to track the performance of the S&P 500. Complt. ¶ 31. Other Collective Funds offered by NTI invest in fixed income securities or attempt to replicate the performance (and risks) of other indices. *Id*. All of these Collective Funds also seek to earn additional revenue by engaging in securities lending. *Id*.

Northern Trust acts as securities lending agent for NTI's Collective Funds. Complt. ¶ 37. In that capacity, Northern Trust lends securities owned by the Collective Funds to qualified borrowers. Complt. ¶¶ 2, 37. Those borrowers put up at least 102% of the market value of the loaned securities — usually in cash — as collateral to ensure that the securities will be returned when the loans terminate. Complt. ¶ 38. Northern Trust invests the cash collateral in various collateral pools. Complt. ¶¶ 2, 7. The S&P 500 Fund, for example, uses the so-called STEP collateral pool to invest 75% of its cash collateral. Complt. ¶ 8. The collateral pools maintain some of their assets in cash or overnight securities to ensure that they have the liquidity necessary to repay borrowers when loans come due and when market values fluctuate.[1] The rest is invested in a variety of longer-term fixed income instruments. The goal is to earn a rate of return on the collateral pool investments that exceeds any fees ("rebates") paid to borrowers for the privilege of using the cash collateral they provide. Complt. ¶ 14. Northern Trust is paid a fee equal to 40% of the net revenue; the Collective Funds receive the other 60%. Complt. ¶ 10.

Plaintiff alleges that securities lending poses three potential risks for investors: (i) operational risk if the lending agent fails to perform its various obligations; (ii) borrower risk if the borrower defaults; and (iii) investment risk if the collateral investments do not perform as expected, creating a shortfall in the amount of collateral necessary to repay borrowers. Complt. ¶ 13. Here, plaintiff does not allege any operational errors or losses due to borrower defaults. Instead, his complaint is that some of the investments in the collateral pools performed poorly, resulting in losses. Complt. ¶ 14.

The Court can take judicial notice of the fact that in mid-September 2008, the world experienced an unprecedented credit crisis. *See* Complt. ¶ 42. In the course of a single week,

---

[1] The market value of the loaned securities is calculated daily. If it goes up, the borrower must provide additional cash collateral, so that the collateral coverage remains at the required level. If the market value goes down, any overage is refunded to the borrower out of the collateral pool.

Lehman Brothers declared bankruptcy, Merrill Lynch avoided bankruptcy by agreeing to be absorbed by Bank of America, the government launched its first effort to bail out AIG, and the nation's oldest money market fund (the Reserve Primary Fund) announced that it had "broken the buck," prompting the Federal Reserve to intervene to prevent a run on money market funds. In the wake of these events, three of the securities held in STEP (Lehman notes and securities issued by two structured investment vehicles, Sigma and Theta) became permanently impaired and the market value of other securities fell. Complt. ¶¶ 46-48.  The losses resulting from writedowns in STEP flowed through to the Collective Funds and ultimately caused a "tracking" variance in the S&P 500 Fund, meaning that the Fund underperformed the S&P 500 index for the period in question.  Complt. ¶ 11.[2]

In Count I, plaintiff alleges that the defendants were ERISA fiduciaries and that they acted imprudently by investing cash collateral in fixed income securities that became impaired or illiquid in the fall of 2008.  With 20/20 hindsight, plaintiff alleges that these securities were too risky from the day they were purchased or should have been sold in 2007, when the credit markets started to tighten.  Complt. ¶ 41.  In Count II, plaintiff claims that NTI, as Trustee of the Collective Funds, should not have engaged in securities lending at all, because ERISA allegedly prohibited both (i) lending securities owned by the Collective Funds and (ii) payment of fees to Northern Trust as securities lending agent.  Complt. ¶¶ 64, 91.  Plaintiff recognizes that the Department of Labor has issued a regulation, Prohibited Transaction Class Exemption ("PTE") 2006-16, allowing ERISA fiduciaries to engage in securities lending and to pay fees to affiliated securities lending agents.  Complt. ¶ 92.  Although plaintiff asserts that the defendants "have

---

[2]   Plaintiff's allegation in ¶ 50 that securities had to be sold at a loss to repay collateral to borrowers is simply not true. Although the market value of the securities in the pools declined because of market conditions, Northern Trust put withdrawal safeguards in place to protect the liquidity in the pools and to avoid having to sell securities at fire-sale prices. *See  BP Corp. N. Am. Inc. v. N. Trust Invs., N.A.*, 2008 WL 5263695, *2 (N.D. Ill. Dec. 16, 2008).  If conditions improve and the market value of the assets improves, losses the lending Funds suffered in the fall of 2008 may be reduced in the future.

4

failed to comply with PTE 2006-16's requirements in numerous ways," *id.,* the complaint is silent as to how or why defendants supposedly failed to comply.

Plaintiff seeks to bring this lawsuit not only on behalf of the ExxonMobil Savings Plan in which he is a participant, but also on behalf of approximately 600 ERISA plans in which he has no interest whatsoever. Complt. ¶¶ 33, 66-67. All of those plans invested in lending Collective Funds offered by NTI. Plaintiff seeks to sue on behalf of all of the Plans, regardless of whether they invested in the S&P 500 Fund or in other Collective Funds.

**ARGUMENT**

Recently, in *Ashcroft v. Iqbal*, the Supreme Court explained that even under notice pleading standards, plaintiffs must provide a factual basis for their claims:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in *Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id*., at 555 (citing *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  550 U.S., at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.,* at 557.

129 S.Ct. at 1949. As demonstrated below, plaintiff here offers only "labels and conclusions" and has done nothing to "show" that he is entitled to relief. *See id.* at 1950 ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.' Fed. Rule Civ. Proc. 8(a)(2)").

**I.    Plaintiff Has Failed To State A Claim For Imprudence.**

Plaintiff alleges in Count I that defendants acted imprudently by investing cash collateral in supposedly "risky" fixed-income securities. Nowhere in the complaint, however, are there any allegations of fact to suggest that any particular securities were unduly "risky" at the time

5

they were purchased or, indeed, at any time before the credit markets froze in September 2008. Instead, plaintiff's theory seems to be that the instruments in question must have been too "risky" because three (Lehman, Sigma and Theta) ultimately became impaired and others became illiquid and dropped in value when the market for fixed-income securities ceased functioning.

It is well-settled, however, that ERISA's fiduciary duty of care "requires prudence, not prescience." *DeBruyne v. Equitable Life Assurance Soc'y of the United States,* 920 F.2d 457, 465 (7th Cir. 1990). *Accord*, *Keach v. U.S. Trust Co.,* 419 F.3d 626, 638 (7th Cir. 2005); *Roth v. Sawyer-Cleator Lumber Co.,* 16 F.3d 915, 918 (8th Cir. 1994) (the "prudent person standard is not concerned with results; rather it is a test of how the fiduciary acted viewed from the perspective of the time of the challenged decision rather than from the vantage point of hindsight"); *Kanawi v. Bechtel Corp.,* 590 F.Supp.2d 1213, 1230 (N.D. Cal. 2008) (underperformance does not establish imprudence; "such 20/20 hindsight musings are not sufficient to maintain a cause of action alleging a breach of fiduciary duty"). Here, all plaintiff has offered is 20/20 hindsight. Nowhere are there factual allegations that would allow the Court to infer that Northern Trust knew or should have known that it was buying instruments that created an undue risk of loss for its securities lending program.

In *Twombly*, the Supreme Court explained that "some specificity in pleading" is required "before allowing a potentially massive factual controversy to proceed." 550 U.S. at 558 (citation omitted). *Twombly* held that plaintiffs were required to plead sufficient facts to show that their claim had "facial plausibility." *Ashcroft*, 129 S.Ct. at 1949. In *Ashcroft*, the Supreme Court explained that the "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief,'" *id.*, and thus fails to state a claim.

Here, plaintiff has done no more than allege facts that are "merely consistent with" liability. Plaintiff has alleged no facts to enable the Court to "draw the reasonable inference that the defendant[s are] liable for the misconduct alleged." *Id.* Indeed, the kinds of allegations made here could be made against any securities lending agent or any fiduciary who invested in anything other than government-issued or guaranteed securities. *Everyone* suffered investment losses as a result of the worst financial meltdown since the Great Depression. Without more, the mere fact that the Collective Funds suffered losses from securities lending is not enough to show that a claim that the losses were due to imprudence on the part of the defendants is "plausible."

## II.   Plaintiff Has Failed To State A Claim Based On His Theory That Defendants Engaged In Prohibited Transactions.

Section 406 of ERISA, 29 U.S.C. § 1106, prohibits any transaction between a plan and a "party in interest" unless it falls within exemptions provided by Department of Labor regulations. "Party in interest" is a broad term that includes any fiduciary, affiliate of a fiduciary, or anyone who provides services to a plan. *See* 29 U.S.C. § 1002(14). Plaintiff alleges that the borrowers to whom the Collective Funds lend securities were "parties in interest." Complt. ¶ 64. Based on this characterization, plaintiff alleges that every loan of securities by the Collective Funds constituted a prohibited transaction.

To state a claim based on the assertion that the borrowers were "parties in interest," however, plaintiff must do more than merely label them as such. In addition, he must offer factual allegations to explain *why* the borrowers should be deemed "parties in interest." As the Supreme Court explained in *Ashcroft*,

> the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime

of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.

129 S.Ct. at 1949-50. In this case, it is *possible* that some of the banks or brokers that borrowed securities from the Collective Funds could be deemed to fall within the category of "parties in interest."[3] But the complaint offers no factual basis to assume that is true. Accordingly, under *Ashcroft*, plaintiff's conclusory allegations that the borrowers were "parties in interest" and the borrowings were therefore prohibited transactions must be disregarded.

Moreover, the assertion that a transaction is a "prohibited transaction" under Section 406 is the beginning, rather than the end, of the analysis. As plaintiff acknowledges, the Department of Labor has issued specific regulations designed to enable ERISA plans to engage in securities lending even if the borrowers are "parties in interest." Complt. ¶ 92. PTE 2006-16 sets forth a variety of conditions that must be met for a securities lending program to fall within the safe harbor it provides. *See* Ex. B hereto. Among other things, the loans must be backed by collateral equal to at least 100% of the market value of the loaned securities; the market value of those securities must be valued each trading day and the collateral adjusted so that it always has the required coverage; and the borrower must agree either to pay a fee in return for the loan of the securities or give the lender "the opportunity to derive compensation through the investment of the currency collateral." 71 Fed. Reg. 63796 (Oct. 31, 2006).

According to plaintiff's own allegations, the securities lending program operated by Northern Trust for the benefit of the Collective Funds met the requirements outlined above. *See* Complt. ¶¶ 7, 14, 38. In an attempt to salvage his prohibited transaction claim, plaintiff nevertheless claims that Northern Trust failed to comply with PTE 2006-16's requirements in

---

[3] Merely borrowing securities from an ERISA plan does not cause a borrower to become a party in interest. To be a party in interest each borrower must have had a separate relationship with the plan of the kind specified in 29 U.S.C. § 1002(14), such as an employer, fiduciary or service provider.

"numerous ways." Complt. ¶ 92. But plaintiff offers no explanation as to how the Northern Trust program supposedly deviated from those requirements. Under *Ashcroft*, plaintiff's conclusory allegation of non-compliance is "not entitled to the assumption of truth" and must be disregarded in evaluating the sufficiency of his claims. 129 S.Ct. at 1950. Because plaintiff has not alleged any facts to support his assertion that the loan transactions with borrowers were prohibited transactions or that they ran afoul of PTE 2006-16, his claim in Count II that those transactions violate Section 406 should be dismissed.

The same is true of plaintiff's claim that the securities lending fees paid to Northern Trust violated Section 406. Plaintiff alleges that Northern Trust was either a fiduciary itself or a "party in interest" because it is an affiliate of NTI; as such, any payment of fees falls within the scope of Section 406. Complt. ¶¶ 23-24, 90. Once again, however, PTE 2006-16 expressly allows securities lending agents who provide services, whether directly or indirectly, to ERISA plans, to be paid for their services, so long as the plan fiduciary has authorized both the securities lending activity and the fee, and the fee is reasonable. *See* 71 Fed. Reg. 63796-63797.

In this case, plaintiff acknowledges that the ExxonMobil Plan entered into a written agreement expressly permitting plan assets to be invested in Collective Funds that engaged in securities lending. Complt. ¶¶ 37-38. Attached as Exhibit A hereto is the Collective Funds Custody Agreement entered into between NTI and the Administrator-Finance (also referred to as the "Investment Fiduciary") of the ExxonMobil Savings Trust. The stated purpose of that Agreement (¶ 1) is to facilitate the ExxonMobil Plan's investment in Collective Funds maintained by NTI as trustee. Exhibit B to the Agreement authorizes investment in specific lending funds, including the S&P 500 Fund. Paragraph 8 acknowledges that those "Lending Funds" may lend securities, that any such securities lending will be in accordance with PTE 81-6 and 82-63 (the predecessors to PTE 2006-16 (*see* 71 Fed. Reg. 63786)), and that Northern Trust

9

is an NTI affiliate, which has been appointed to serve as securities lending agent for the Lending Funds. Paragraph 8 then goes on to expressly authorize the payment of a monthly fee to Northern Trust Company "of 40% of the securities lending revenue earned by such Lending Fund" as compensation for its services as securities lending agent.[4]

Plaintiff does not and could not allege that the trustees of the ExxonMobil Plan failed to properly authorize Northern Trust's fees. Instead, plaintiff's theory is that Northern Trust's fees were unreasonable. Once again, however, plaintiff provides no basis for that conclusory assertion. Thus, for example, plaintiff does not claim — nor could he claim — that Northern Trust's fees were outside the normal range of fees charged by securities lending agents in general or Northern Trust in particular. Nor does plaintiff offer any explanation as to why the judgment of the trustees of the ExxonMobil Plan, who made the decision to approve the fees paid to Northern Trust, should not be respected. Because plaintiff has failed to provide any facts to support his conclusory assertion that Northern Trust's fees were unreasonable, his claim that the payment constituted a prohibited transaction should also be dismissed.

### III. Plaintiff Lacks Standing To Represent The Class He Has Defined.

For the foregoing reasons, the Court should dismiss plaintiff's complaint. But if any claim survives, the Court should reject plaintiff's attempt to bring suit on behalf of *all* of the ERISA plans that invest in *all* of the NTI Collective Funds that engage in securities lending.

#### A. Plaintiff Cannot Sue On Behalf Of Plans In Which He Is Not A Participant.

As a participant in the ExxonMobil Savings Plan, plaintiff has a statutory right under ERISA § 502(a)(2) to bring a lawsuit on behalf of that Plan to recover any losses it may have suffered as a result of a breach of ERISA duties. But he has no statutory right to sue on behalf of

---

[4]  Because plaintiff refers to that agreement in the complaint and it is central to his claims, the Court may consider the full text of the agreement document on a motion to dismiss. See, *e.g.*, *The Cancer Foundation, Inc. v. Cerberus Capital Mgt.*, 559 F.3d 671, 675 n.1 (7th Cir. 2009).

any other ERISA plan in which he is not and never was a participant. Yet plaintiff purports to bring his claims on behalf of "hundreds" of such ERISA Plans, based solely on the fact that those Plans "invested or maintained investments" in the NTI Collective Funds that engaged in securities lending from January 1, 2007 to the present. Complt. ¶ 66.

Plaintiff does not bother to explain how he has standing to sue on behalf of a proposed class of ERISA plans. However, his attempt to do so mirrors the tactic rejected by the court in *Kauffman v. The Dreyfus Fund, Inc.*, 434 F.2d 727 (3d Cir. 1970). In that case, the plaintiff brought a derivative action against certain defendants for securities fraud, seeking damages on behalf of four mutual funds in which he had invested. Like plaintiff here, Kauffman then tried to parlay his derivative suit into a class action on behalf of 61 additional mutual funds in which he had no interest whatsoever. The Third Circuit reversed a decision certifying the proposed class, holding that plaintiff lacked standing either to represent the other mutual funds or to force his mutual funds to bring a class action on behalf of the entire industry:

> The fatal defect in this "champion of the industry" approach is that it seeks to equate a corporation's primary right of action with a shareholder's secondary right to bring a derivative action. To be sure, if the fund itself sought to bring a class action on behalf of other funds similarly situated, there would be no theoretical barrier prohibiting such a class action. But the fund is not the plaintiff in the case at bar, and the only right the individual derivative plaintiff possesses is a secondary one — a right which not only defines his standing to sue but also limits the extent of the possible recovery, i.e., the damages sustained by the corporation in which he is a shareholder. . . . *A shareholder can only require a corporation to initiate a matter to protect the rights of a shareholder qua shareholder; he cannot force a corporation to bring a class action for the fundamental reason that whatever wrongs other corporations similarly situated have sustained are immaterial and irrelevant to a derivative plaintiff's limited and secondary cause of action.* There may be injuries to other corporations, but because [plaintiff] does not possess the stockholder relationship to them and the proprietary interest which accompanies this relationship, he may not qualify as their representative in a class action.

434 F.2d at 737 (emphasis added). *Kauffman* has been repeatedly cited and followed by courts that have denied investors in mutual funds the right to bring class actions on behalf of not only their own, but also other mutual funds in which they had no interest, on the ground that all of the

11

funds were similarly situated.[5]

The same analysis applies here. Plaintiff has statutory authority to sue on behalf of his own plan (the ExxonMobil Plan), without having to go through the procedures applicable in a derivative action. But neither ERISA nor any other statute gives him the right to sue on behalf of *other* plans in which is he not a participant or to force the ExxonMobil Plan to serve as representative of a class of other employers' ERISA plans. In *Mertens v. Hewitt Associates*, the Supreme Court emphasized its "unwillingness to infer causes of action in the ERISA context, since that statute's carefully crafted and detailed enforcement scheme provides 'strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.'" 508 U.S. 248, 254 (1993) (*quoting Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146-47 (1985)). Thus, it is not enough that ERISA "clearly does not bar such a suit." *Mertens*, 508 U.S. at 255 n.5; rather, "[t]he issue is whether the statute affirmatively *authorizes* such a suit." *Id.* (emphasis in original). Because ERISA plainly does not authorize a participant to bring a class action on behalf of other ERISA plans or to force his own plan to do so, any such claim should be barred for lack of standing to pursue it.[6]

### B. Plaintiff Has No Standing To Sue For Losses Suffered In Collective Funds In Which He Personally Did Not Invest.

To the extent that plaintiff seeks to bring claims on behalf of either his own or other ERISA plans based on losses in Collective Funds other than the NTI S&P 500 Fund, he is precluded from doing so for a different reason — he lacks constitutional standing to complain

---

[5] *See, e.g.*, *In re Lord Abbett Mutual Funds Fee Litig.*, 463 F. Supp.2d 505, 508 n.3 (D.N.J. 2006), *vacated on other grounds*, 553 F.3d 248 (3d Cir. 2009); *Zucker v. AIM Advisors, Inc.*, 371 F. Supp.2d 845, 850-51 (S.D. Tex. 2005); *In re Dreyfus Mut. Funds Fee Litig.*, 428 F. Supp.2d 342, 353 (W.D. Pa. 2005); *In re Franklin Mut. Funds Fee Litig.*, 388 F.Supp.2d 451, 468 n.13 (D.N.J. 2005); *accord*, *Williams v. Bank One Corp.*, 2003 WL 22964376 at *1 (N.D. Ill. Dec. 15, 2003).

[6] *See also Mehling v. New York Life Ins. Co.*, 413 F. Supp.2d 476, 479-81 (E.D. Pa. 2005), where the court applied this principle in holding that ERISA plan participants who were asserting ERISA claims on behalf of their plan could not derivatively assert RICO claims as well.

about losses in funds in which he never invested. "[C]onstitutional standing [is] a prerequisite to Rule 23 class certification." *In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98, 108 (D.C. Cir. 2002); *accord Bertulli v. Independent Ass'n of Cont'l Pilots*, 242 F.3d 290, 294 (5th Cir. 2001). In order to have standing, a class representative must "possess the same interest and suffer the same injury" as the absent class members. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-626 (1997); *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 156 (1982).

Outside the ERISA context, investors in the S&P 500 Fund would not be able to sue for damages to investors in an entirely different fund — particularly if the fund used an entirely different collateral pool. Even in a class action, they would be limited to suing for harm allegedly inflicted on the S&P 500 Fund. *See, e.g.*, *Hoffman v. UBS-AG*, 591 F.Supp.2d 522, 532 (S.D.N.Y. 2008) ("Plaintiffs lack standing for claims relating to funds in which they did not personally invest"); *Siemers v. Wells Fargo & Co.*, 2006 WL 3041090, *7-8 (N.D. Cal. Oct. 24, 2006) (plaintiff had no standing to pursue a class claim under Section 36(b) of the Investment Company Act of 1940 as to "[Wells Fargo] funds other than those owned by plaintiff"); *In re AllianceBernstein Mut. Fund Excessive Fee Litig.*, 2005 WL 2677753, *10 (S.D.N.Y. Oct. 19, 2005) (plaintiff lacked standing to "pursue Section 36(b) claims on behalf of the Funds in which they do not own shares"), *vacated on other grounds*, 2006 WL 74439 (S.D.N.Y. Jan. 11, 2006); *Nenni v. Dean Witter Reynolds, Inc.*, 1999 WL 34801540, *2 (D. Mass. Sept. 29, 1999) (plaintiff could sue a broker-dealer and underwriter on behalf of investors in the mutual funds he himself had invested in, but lacked standing to sue on behalf of investors in funds in which he had no interest).

That plaintiff is a participant in an ERISA plan does not change the analysis. An ERISA plan participant bringing a breach of fiduciary duty claim must show "that the breach of fiduciary duty caused some harm to him or her that can be remedied." *Kamler v. H/N Telecomm.*

13

*Servs., Inc.*, 305 F.3d 672, 681 (7th Cir. 2002). In the context of a defined contribution plan, that means that a participant can sue on behalf of the plan only to the extent that the investment options he selected resulted in losses. To put it in concrete terms, plaintiff here could not have sued on behalf of the ExxonMobil Plan if the S&P 500 Fund had not suffered any losses at all. By the same token, he cannot sue on behalf of the ExxonMobil Plan for losses suffered entirely by *other* ExxonMobil Plan participants in *other* Collective Funds in which plaintiff had no interest.

It is true that 29 U.S.C. § 1132(a)(2) authorizes plan participants to sue on behalf of the plan. That gives plaintiff *statutory* standing to sue on behalf of the ExxonMobil Savings Plan for any losses that Plan may have suffered. But plaintiff must also demonstrate that he has *constitutional* standing to bring such an action. In a defined benefit plan, participants receive a fixed pension paid from a single trust. Any loss to the plan injures all participants. Because any single participant has only a small, fractional interest in the overall plan, § 1132(a) was crafted to allow participants in defined benefit plans to protect their pension interests by pursuing relief "on behalf of" the plan. *See Bendaoud v. Hodgson*, 578 F. Supp. 2d 257, 264 (D. Mass. 2008). Defined contribution plans, by contrast, work very differently. Because participants have individual accounts, "fiduciary misconduct need not threaten the solvency of the entire plan" but instead can be "tied to particular individual accounts." *LaRue v. DeWolff, Boberg & Assocs.*, 128 S. Ct. 1020, 1025 (2008). When that happens (as it did allegedly here), only those who are actually invested in the affected accounts should be able to sue — and then only for the accounts in which they invested. *See Bollig v. Christian Cmty. Homes & Servs., Inc.*, 2003 WL 23200362, *2 (W.D. Wis. July 10, 2003), where the court dismissed an ERISA action for monetary relief because plaintiffs had not shown individual loss that would satisfy the constitutional requirement

of injury-in-fact. *Id.* Although the Seventh Circuit has not yet ruled on this issue, the court's approach in *Bollig* has been employed by the Second, Third, Sixth, and Ninth Circuits.[7]

Based on the allegations of the complaint, defendants are not challenging plaintiff's standing to bring suit on behalf of the ExxonMobil Plan for losses suffered by that particular Plan as a result of participant-directed investments in the S&P 500 Fund. But — assuming plaintiff can meet the pleading requirements outlined above — that should be the limit of the claims plaintiff can pursue. All other claims should be dismissed for lack of standing.

## CONCLUSION

For the foregoing reasons, plaintiff's complaint should be dismissed or, at the very least, substantially narrowed so that it is brought only on behalf of the ExxonMobil Plan based on alleged losses in the S&P 500 Fund.

Respectfully submitted,

Dated: June 1, 2009

/s/Michele Odorizzi
Michele Odorizzi
Caryn L. Jacobs
John J. Tharp, Jr.
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
(312) 782-0600

---

[7] *See Loren v. Blue Cross & Blue Shield*, 505 F.3d 598, 608 (6th Cir. 2007) ("Merely because Plaintiffs claim that they are suing on behalf of their respective ERISA plans does not change the fact that they must also establish individual standing"); *Glanton v. AdvancePCS Inc.*, 465 F.3d 1123, 1125 (9th Cir. 2006) (although plan participants are "congressionally authorized representatives of the injured plans," they lack constitutional standing unless "the injury they have suffered will be redressed by a favorable outcome to the litigation"); *Cent. States SE. & SW. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 433 F.3d 181, 200 (2d Cir. 2005) (plan participants seeking money damages under ERISA must "demonstrat[e] individual loss"); *Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450, 456 (3d Cir. 2003) (same); *see also Bendaoud v. Hodgson*, 578 F. Supp. 2d 257, 266 (D. Mass. 2008).

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSEPH L. DIEBOLD, JR., on behalf of the EXXONMOBIL SAVINGS PLAN, and all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>NORTHERN TRUST INVESTMENTS, N.A., and THE NORTHERN TRUST COMPANY,<br><br>    Defendants. | No. 09 Civ. 1934<br><br>Hon. George W. Lindberg<br>*Judge Presiding.* |

### TABLE OF EXHIBITS ACCOMPANYING DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS

**EXHIBIT A — EXXONMOBIL COLLECTIVE FUND CUSTODY AGREEMENT**

**EXHIBIT B — PTE 2006-16 (71 FED. REG. 63786-63799 (Oct. 31, 2006))**

**EXHIBIT C — UNPUBLISHED CASES CITED IN MOTION TO DISMISS**