

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JOSEPH L. DIEBOLD, JR., on behalf of the )
EXXONMOBIL SAVINGS PLAN, and )
PAUL J. HUNDT, on behalf of the TEXAS )
INSTRUMENTS 401(K) SAVINGS PLAN, )
and all others similarly situated, )
         )
        Plaintiffs, )
         )     No. 09 CV 1934
        v. )
         )     Hon. Charles R. Norgle
NORTHERN TRUST INVESTMENTS, N.A., )
And THE NORTHERN TRUST COMPANY, )
         )
        Defendants. )

## OPINION AND ORDER

Plaintiffs Joseph L. Diebold ("Diebold") and Paul J. Hundt ("Hundt")

(collectively, "Plaintiffs") sue Defendants Northern Trust Investments, N.A. ("NTI") and

The Northern Trust Company ("NTC") (collectively, "Defendants") pursuant to the

Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* Before

the Court is Plaintiffs' Motion for Leave to File a Second Amended Class Action

Complaint. For the following reasons, the motion is granted in part, and denied in part.

## I.    BACKGROUND

### A. Facts[1]

Plaintiffs Diebold and Hundt participate in defined contribution plans offered by

their employers, ExxonMobil and Texas Instruments (the "Exxon" and "TI" Plans)

respectively. NTI serves as the investment manager for the Exxon and TI Plans.

---

[1] The facts of this case are documented extensively in the Court's prior Opinion and Order ruling on Defendants' Motion to Dismiss. Diebold v. Northern Trust Invs., N.A., No. 09 C 1934, 2010 WL 3700387, at *1-2 (N.D. Ill. Sept. 7, 2010). A portion of those facts are reproduced herein.

Participants in the Plans selected collective funds into which they wished to invest. Diebold selected NTI's S&P 500 Index Fund. Hundt selected NTI's Aggregate Bond Index Fund, the Russell 2000 Index Fund, and the Russell 1000 Growth Equity Index Fund. Each of Plaintiffs' chosen funds participated in NTI's securities lending program, which is the basis of Plaintiffs' claims.

NTI "lends" the stocks or bonds it holds in various Index Funds to certain borrowers. The borrowers post collateral equal to 102% of the value of the borrowed shares. As the value of the borrowed securities fluctuates, so too does the collateral held by NTI. In the event the value of the borrowed securities decreases, collateral is returned to the borrower. In the event the value of the borrowed securities increases, more collateral must be posted. Because NTI must adjust the amount of collateral it holds, some of that collateral must be held in liquid assets. NTI invests the remainder of the collateral to generate a return for the funds that participate in securities lending.

As the investment manager for the Plans, NTI has the discretion to manage, acquire, and dispose of collateral assets. NTI delegated this authority to NTC, which manages NTI's securities lending programs, negotiating terms with borrowers and investing the collateral received by NTI. NTC takes its fee as a percentage of the profits from the securities lending program, but does not share in the risk for the investment of the collateral.

To manage the collateral, NTC created collateral pools. Each of the pools retained some assets in cash or overnight securities to provide a measure of liquidity necessary to repay borrowers when loans came due. NTC invested the remainder of the assets in the collateral pools in longer-term fixed-income instruments in accordance with

investment guidelines established for each pool. Plaintiffs allege that NTI and NTC imprudently managed the collateral pools, which caused the funds in which they invested to lose money.

## B. Procedural History

Plaintiffs initiated this ERISA action on March 30, 2009. Plaintiffs filed their two-count Amended Class Action Complaint on December 9, 2009. On September 7, 2010, the Court dismissed Plaintiffs' prohibited transaction claim, Count II of Plaintiffs' Amended Complaint. Diebold, 2010 WL 3700387, at *6. Shortly thereafter, Plaintiffs indicated that they intended to file a second amended complaint. Defs.' Opp. to Pls.' Mot. for Leave to File Second Am. Class Action Compl. 2. Ultimately, Plaintiffs declined to file an amended complaint at that time, and the Court ordered discovery to begin on the remaining claim. Tr. of Oct. 14, 2010 Hearing at 10. Approximately seventeen months later, on February 15, 2012, Plaintiffs filed the instant motion for leave to file a second amended complaint. The motion is fully briefed and before the Court.

## II.    DISCUSSION

### A. Standard of Decision

Courts should freely grant parties leave to file amended complaints "when justice so requires." Fed. R. Civ. P. 15(a)(2); Indep. Trust Corp. v. Stewart Info. Servs. Corp., 665 F.3d 930, 943 (7th Cir. 2012). "[W]hile a court may deny a motion for leave to file an amended complaint, such denials are disfavored." Gevas v. Mitchell, No. 11-2740, 2012 WL 3554085, at *4 (7th Cir. Aug. 20, 2012) (quoting Bausch v. Stryker Corp., 630 F.3d 546, 562 (7th Cir. 2010)). "A district court may deny leave to file an amended complaint in the case of undue delay, bad faith or dilatory motive on the part of the

movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or where the amendment would be futile." Id.

## B. Plaintiffs' Motion for Leave to File a Second Amended Class Action Complaint

The proposed second amended complaint seeks to revive the previously dismissed claims, alleging that Defendants engaged in prohibited transactions and self-dealing under ERISA (Count III), and add a new claim alleging that Defendants took unreasonable fees from the securities lending (Count II). Defendants make several objections to Plaintiffs' motion including undue delay in the filing, prejudice to Defendants, and futility of the additional allegations.

### 1. Undue Delay

Defendants argue that although Plaintiffs could have filed the instant motion immediately following the dismissal of Count II on September 7, 2010, they waited nearly seventeen months to do so. While Plaintiffs contest that the motion could have been filed sooner, almost a year and a half is a long delay. It is true that "the longer the delay, the greater presumption against granting leave to amend." Johnson v. Cypress Hill, 641 F.3d 867, 872 (7th Cir. 2011). However, "delay by itself is normally an insufficient reason to deny a motion for leave to amend. Delay must be coupled with some other reason. Typically, that reason . . . is prejudice to the non-moving party." Dubicz v. Commonwealth Edison Co., 377 F.3d 787, 793 (7th Cir. 2004) (internal citation omitted) (finding a delay of eight months an insufficient basis to deny leave to amend). Here, discovery has not closed. Indeed, discovery has been extended until January 28, 2013. While Plaintiffs filed a motion for class certification, it is not fully

briefed and the deadline for sur-reply briefs is not until December 10, 2012. As discovery remains on-going, the seventeen month delay in filing a second amended complaint alone is not grounds for denying leave to amend.

### 2. Undue Prejudice

Defendants also argue that they will be unduly prejudiced if the Court grants Plaintiffs' motion because of the time and cost of additional discovery, as well as the time and cost of delaying or re-starting the briefing for Plaintiffs' motion for class certification. The Court rejects these arguments. Discovery has been extended to January 28, 2013 by agreement of both Plaintiffs and Defendants. Moreover, the new proposed discovery schedule does not indicate that any significant discovery had been completed as of May 8, 2012. Regarding class certification, the motion is not fully briefed. Nor is there any suggestion that the additional proposed claims would substantially change the parties' respective arguments. Therefore, Defendants will not be unduly prejudiced by the filing of a second amended complaint.

### 3. Futility

#### a. Proposed Count II: Unreasonable Fees

In the proposed second amended complaint, Plaintiffs add a new claim alleging that "Defendants breached their fiduciary duties by setting and taking for themselves unreasonable compensation for securities lending services." Pls.' Mot. for Leave to File a Second Am. Class Action Compl. Ex. A, ¶ 155. Defendants argue that allowing Plaintiffs to file their new claim for unreasonable fees would be futile for three reasons: (1) because the claim is barred by the statute of limitations under ERISA; (2) because

Plaintiffs fail to state a claim for unreasonable fees; and (3) because the claim is barred by a valid contract agreeing to the fees.

First, Defendants allege that Plaintiffs' new claim for unreasonable fees is barred by ERISA's three-year statute of limitations, or alternatively ERISA's six-year statute of limitations as to Hundt. Under the three-year statute of limitations, a plaintiff must have had "actual knowledge of the breach." 29 U.S.C. § 1113(2). Actual knowledge under ERISA is not constructive knowledge, and requires "specific knowledge of the actual breach." Radiology Ctr., S.C. v. Stifel, Nicolaus & Co., 919 F.2d 1216, 1222 (7th Cir. 1990). Defendant argues that because Diebold's Exxon Plan signed an investment agreement on March 11, 2004, and Hundt's TI Plan signed an agreement on March 14, 2002, Plaintiffs had actual knowledge of the fee arrangements as of the date of the respective agreements. However, the mere fact that the fees were listed in the agreements with the Plans is insufficient to impute actual knowledge on the individual Plaintiffs. "Merely pointing to communications which provided information about the Fund's structure, investment strategy, fees, and performance is not enough to provide Plaintiffs with actual knowledge of the breach of fiduciary duty. . . . At best, these disclosures may have merely suggested to Plaintiffs that 'something was awry' with respect to the Funds." George v. Kraft Foods Global, Inc., 814 F. Supp. 2d 832, 851 (N.D. Ill. 2011).

Defendants also argue that the six-year statute of limitations, which does not require actual knowledge, bars Hundt's claims because his Plan signed the fee agreement with Defendants more than six years before filing suit. The Court similarly rejects this argument, as the fees were ongoing, and thus Defendants would remain liable for any unreasonable fees taken within the statutory period. See id. at 851-52 (finding that since

a fiduciary has a continuing duty to "review plan investments or eliminate imprudent investment options," failure to do so with regard to alleged unreasonable fees is actionable under ERISA within the six-year statutory period leading up to the filing of the complaint).

Second, Defendants argue that Plaintiffs do not state a claim for unreasonable fees because they have not pled any valid comparisons that would prove that Defendants' fees were unreasonable for "bank collective funds during the period at issue here." Defs.' Opp. to Pls.' Mot. for Leave to File Second Am. Class Action Compl. 13-14. However, "ERISA does not have heightened pleading requirements, but is subject to the notice pleading standard of [Rule 8], i.e., . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . and that provides a defendant with fair notice of the claim against him." Abbott v. Lockhead Martin Corp., No. 06 CV 0701, 2009 WL 839099, at *4 (S.D. Ill. Mar. 31, 2009) (internal citations and quotation marks omitted). Under Rule 8, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

Plaintiffs claim that the fees were unreasonable because, *inter alia*, Defendants set all of the terms and conditions between themselves and took forty percent of the net income from the securities lending. Pls.' Mot. for Leave to File a Second Am. Class Action Compl. Ex. A, ¶¶ 99 & 102. The Court need not decide whether the comparisons are inapt because Plaintiffs' allegations in support of their claim for unreasonable fees otherwise satisfy Twombly and its progeny. See Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 599-600 (8th Cir. 2009) (reversing district court's dismissal of plaintiff's claim alleging unreasonable fees where plaintiff alleged, *inter alia*, that "each fund was selected

for inclusion in the Plan because it made payments to the trustee, and not because it was a prudent investment"); but see Hecker v. Deere & Co., 556 F.3d 575, 586 (7th Cir. 2009) (finding that because Plan participants were offered over 2,500 different funds in which to invest, plaintiff could not plausibly allege that the fees charged were unreasonable or that the funds were imprudently chosen). Accordingly, the Court finds that it would not be futile to grant Plaintiffs leave to file a claim based on unreasonable compensation.

Lastly, Defendants argue that Plaintiffs' Plans agreed to the amount of fees in investment agreements signed with Defendants, thereby inferring that Plaintiffs likewise agreed. Defendants cite to Jones v. Harris Assocs. L.P. for the proposition that a trustee "may negotiate in his own interest and accept what the settler or governance institution agrees to pay." 527 F.3d 627, 632 (7th Cir. 2008), rev'd by Jones v. Harris Assocs. L.P., 130 S. Ct. 1418 (2010). Plaintiffs correctly distinguish Jones because it addressed mutual funds which, unlike collective funds governed by ERISA, do not impose a burden of reasonableness on fees. Further, ERISA requires reasonable compensation arrangements between fiduciaries and plans, and "a fiduciary's contract with an employer cannot get it off the hook with the employees who participate in the ERISA plan." IT Corp. v. General Am. Life Ins. Co., 107 F.3d 1415, 1418 (9th Cir. 1997); see 29 U.S.C. § 1108(b)(2), (6), (8). Under these standards, Plaintiffs are not bound by the agreement between Defendants and their plans for purposes of this claim.

### b. Proposed Count III: Prohibited Transaction

Finally, Defendants argue that Plaintiffs failed to cure the deficiencies from the previously dismissed claims alleging a non-exempted prohibited transaction pursuant to § 406(a)(1)(A) and a per se prohibited transaction pursuant to § 406(b)(1). Specifically,

Defendants allege that Plaintiffs merely re-pled the same claims that this Court already dismissed, thus rendering it futile.

The Court finds that Plaintiffs adequately cured the deficiencies, in part. Plaintiffs originally claimed that NTI and NTC's lending agreements with each other and other borrowers constituted a "lease of property" between plans and a party in interest. Pursuant to § 406(a)(1)(A), a transaction between a plan and a party in interest is prohibited where a fiduciary "cause[s] the plan to engage in a transaction, if he knows or should know that such a transaction constitutes a direct or indirect—sale or exchange, or leasing, of any property between the plan and a party in interest." 29 ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A). In dismissing the claim, the Court found that Plaintiffs failed to plausibly allege the existence of a lease and that "[b]ecause NTC acts as the lending agent for NTI, as the Plaintiffs have pleaded, NTI is not exchanging or leasing plan property with a party in interest, and there is no violation of Section 406(a)(1)(A)." Diebold, 2010 WL 3700387, at *5.

Now, Plaintiffs propose to claim that "[NTC] and NTI entered into Lending Agreements with each other whereby [NTC] provided securities lending services to the Lending Funds. These transactions constituted a furnishing of services to the Plans by [NTC], in violation of 29 ERISA § 406(a)(1)(A)."[2] Pls.' Mot. for Leave to File a Second Am. Class Action Compl. Ex. A, ¶ 159. Defendants have already conceded that their lending arrangement could constitute a "furnishing of services" between the Plans and a party in interest in violation of § 406(a)(1)(C). See Defs.' Reply Mem. in Support of Their Mot. to Dismiss the Am. Class Action Compl. 13-14 ("We assume for purposes of

---

[2] A violation based on "furnishing services" is pursuant to 29 ERISA § 406(a)(1)(C), not § 406(a)(1)(A).

argument that NTC's agreement with the Collective Funds to act as their securities lending agent in return for a fee would fall within § 406(a)(1)(C). If so, plaintiffs can challenge NTC's receipt of securities lending fees."); see also Braden, 588 F.3d at 601 (finding that the plaintiff stated a claim pursuant to § 406(a)(1)(C), the court stated, "The complaint alleges that appellees caused the Plan to enter into an arrangement with Merrill Lynch, a party in interest, under which Merrill Lynch received undisclosed amounts of revenue sharing payments in exchange for services rendered to the Plan. . . . The facts alleged are sufficient to shift the burden to appellees to show that no more than reasonable compensation [was] paid for Merrill Lynch's services." (internal citations and quotation marks omitted)). Plaintiffs paid Defendants a percentage of the income from securities lending in compensation for their services. Accordingly, the Court grants Plaintiffs leave to file their claim for a prohibited transaction based on a "furnishing of services" pursuant to § 406(a)(1).

In contrast, Plaintiffs' claim of a self-dealing per se prohibited transaction pursuant to § 406(b)(1) is identical to the claim that this Court previously dismissed. Compare Pls.' Am. Compl. ¶ 128 with Pls.' Proposed Second Am. Compl. ¶ 160 and Pls.' Am. Compl. ¶¶ 132-137 with Pls.' Proposed Second Am. Compl. ¶¶ 118-123. Because Plaintiffs failed to file an appropriate motion challenging the decision after the dismissal of their per se prohibited transaction claim, the Court declines to allow them to re-litigate the same issue now.

## III.    CONCLUSION

With the exception of Plaintiffs' claim pursuant to § 406(b)(1) in Count III of the proposed second amended complaint, Plaintiffs have leave to file their second amended class action complaint.  For the foregoing reasons, Plaintiffs' motion is granted in part, and denied in part.

IT IS SO ORDERED.

ENTER:

_____

CHARLES RONALD NORGLE, Judge
United States District Court

DATE:  September 10, 2012