**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| JOSEPH L. DIEBOLD, JR. on behalf of the EXXONMOBIL SAVINGS PLAN, and PAUL J. HUNDT, on behalf of the TEXAS INSTRUMENTS 401(K) SAVINGS PLAN, and all others similarly situated, | ) ) ) ) ) | CIVIL ACTION NO. 09-CV-1934<br><br>Hon. Charles Norgle |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| NORTHERN TRUST INVESTMENTS, N.A. and THE NORTHERN TRUST COMPANY, | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'**
**UNOPPOSED MOTION FOR AN ORDER GRANTING FINAL APPROVAL OF CLASS**
**ACTION SETTLEMENT AND APPROVING A PLAN OF ALLOCATION OF THE**
**SETTLEMENT PROCEEDS**

## TABLE OF CONTENTS

I.    INTRODUCTION.................................................................................................1

II.   LITIGATION AND SETTLEMENT HISTORY ................................................2

   A.   The Class Claims and Defendants' Defenses.................................................2

   B.   The History of the Litigation..........................................................................4

   C.   Discovery Conducted .....................................................................................5

   D.   The Settlement Negotiations ..........................................................................6

   E.   Preliminary approval, Notice and Class participation....................................6

III.  THE TERMS OF THE SETTLEMENT AGREEMENT ....................................8

   A.   The Benefits to Class Members .....................................................................8

   B.   Attorney's Fees, Costs and Service Award for Plaintiffs.............................10

   C.   Release of Claims.........................................................................................10

IV.   The Court Should grant final approval of the settlement. ...............................11

   A.   In View of the Litigation Risks, the Substantive Terms of the Settlement Are Highly Favorable to the Class..........................................................................................12

   B.   The Settlement was the Result of Lengthy, Hard-Fought Litigation with substantial discovery and Arm's-Length Negotiations.................................................................15

V.    CONCLUSION ................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Air Line Stewards & Stewardesses Ass'n v. Trans World Airlines, Inc.*, 630 F.2d 1164, 1169 (7th Cir. 1980) ...................................................................................................................................11

*Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla.1988)........................................14

*BP Corp. North America Inc. Savings Plan Inv. Oversight Comm. v. Northern Trust Invs.*, 08-cv-06029 (N.D. Ill.)....................................................................................................................................5

*Butler v. American Cable & Telephone, LLC*, No. 09 CV 5336, 2011 WL 2708399, at *8 (N.D. Ill. July 12, 2011) .................................................................................................................................16

*Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) .................................................................14

*FedEx Corp. v. The Northern Trust Co.*, 08-cv-02827 (W.D. Tenn.) ...............................................5

*In re Linerboard Antitrust Litig.*, 296 F. Supp.2d 568, 581 (E.D. Pa. 2003) ..................................14

*In re Mexico Money Transfer Litig.*, 164 F. Supp.2d 1002, 1021-22 (N.D. Ill. 2000)....................16

*In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) ...................................14

*Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)................................................................1, 11, 12

*Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998) ................................13

*Louisiana Firefighters Retirement System v. Northern Trust Investments, N.A.*, Case No. 09-7203 (N.D. Ill) ..6

*McKinnie v. JP Morgan Chase Bank*, 678 F. Supp.2d 806, 812 (E.D. Wis. 2009).........................16

*Newberg on Class Actions* § 11:41 (4th ed. 2009)..........................................................................11

*Newbridge Networks Sec. Litig.*, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998).........................14

*Synfuel Tech., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) ....................12

*Wilkins v. HSBC Bank Nevada, N.A.*, No. 14 C 190, 2015 WL 890566, at *4 (N.D. Ill. Feb. 27, 2015) ...................................................................................................................................12

*Williams v. Quinn*, 748 F. Supp. 2d 892, 897 (N.D. Ill. 2010) ......................................................11

**Statutes**

29 U.S.C. § 1104(a) (2006) ................................................................................................3

29 U.S.C. Section 1106 (2006) ..........................................................................................3

ERISA Section 404(a) .........................................................................................................3

ERISA Section 406 .............................................................................................................3

## I.    INTRODUCTION

Plaintiffs Joseph L. Diebold, Jr., and Paul J. Hundt ("Plaintiffs") respectfully submit this memorandum in support of their request that this Court issue an Order granting final approval of the proposed $36 million Settlement (the "Settlement") negotiated by Plaintiffs and Defendants Northern Trust Investments, N.A. ("NTI") and The Northern Trust Company ("NTC") (collectively, "Northern Trust" or "Defendants"; and, together with Plaintiffs, the "Parties"), and related orders, as described herein. The settlement was filed with this Court in support of the motion for preliminary approval. (Dkt. 255-1.) On March 17, 2015, the Court granted preliminary approval of the Settlement. With the motion for final approval, Plaintiffs submit a proposed Order granting final approval and Declarations of Gregory Y. Porter, Co-Lead Counsel, and Edward J. Sincavage, for the Settlement Administrator.

As reflected in the Settlement Agreement, the Parties desire to compromise and settle all issues and claims relating to the allegations made in this action on behalf of all members of the proposed Settlement Class (the "Class"). Plaintiffs have proposed a plan of allocation that will fairly and adequately compensate Class Members for Defendants' alleged imprudent investment of client assets and other claims in connection with Northern Trust's securities-lending program, as described in the Complaint.

A class action settlement can only be approved if it is fair, reasonable, and adequate, Fed. R. Civ. P. 23(e), and "federal courts naturally favor the settlement of class action litigation," *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). In evaluating the terms of the Settlement described in the Settlement Agreement, Class Counsel have concluded that the benefits provided to the Class under the Settlement Agreement render the Settlement in the best interests of Class Members in light of, among other considerations: (1) the substantial monetary relief afforded to Class Members; (2) the risks and uncertainties of complex litigation such as this action; (3) the expense and length of time

1

necessary to prosecute this action through trial and any subsequent appeals; and (4) the desirability of consummating the Settlement Agreement promptly to provide effective relief to the Class Members.

The Parties reached their proposed Settlement after nearly five years of hard-fought litigation, including dispositive motions filed in this Court and extensive fact and expert discovery, leading to the development of a full legal and factual record. The proposed Settlement was agreed upon only after extensive arm's length negotiations among experienced counsel, including an in-person mediation conducted by a seasoned and well-respected mediator. If approved, the Settlement will provide a significant monetary benefit to Class Members. Plaintiffs and their Counsel believe that the terms of the Settlement are fair, reasonable, adequate, and in the best interests of the Class. Accordingly, Plaintiffs petition this Court for an Order granting final approval of the settlement.

## II.     LITIGATION AND SETTLEMENT HISTORY

### A.     The Class Claims and Defendants' Defenses

Plaintiffs are participants in two ERISA retirement plans that participated in Northern Trust's securities-lending program by investing in certain commingled "Lending Funds" managed by Northern Trust. Plaintiffs alleged that those Lending Funds purportedly offered investors a way to generate incremental income by lending securities from the Lending Fund portfolios on a short-term basis and investing the cash collateral received from those loans in income-producing, safe, liquid instruments. Plaintiffs allege that Northern Trust failed to manage its securities-lending program prudently. Specifically, Plaintiffs allege that Northern Trust violated its fiduciary duties under ERISA in managing two "Collateral Pools" that held the cash collateral received from those who borrowed securities held by the Lending Funds. Plaintiffs also allege that Defendants charged excessive fees for their securities-lending services.

2

Plaintiffs allege that, instead of managing the Collateral Pools as conservative short-term cash investment vehicles consistent with an expected nominal return, Northern Trust caused those Collateral Pools to take on extraordinary levels of risk by making imprudent investments in subprime mortgages, special investment vehicles, and long-term floating-rate notes. Those investments eventually lost hundreds of millions of dollars in value. Thus, Plaintiffs allege that Northern Trust's imprudent management of the Collateral Pools caused the ERISA plans that participated in the securities-lending program to suffer large losses.

Plaintiffs also allege that Defendants took unreasonably high compensation for managing the securities-lending program. Plaintiffs allege that the compensation Defendants took from the Plans for managing this program exceeded both industry standards and the compensation that Defendants received from other institutional investors that negotiated with Defendants in arm's length transactions.

Accordingly, Plaintiffs asserted causes of action against Defendants for:

(1)      breaching their duties of prudence, loyalty, and exclusive purpose under ERISA Section 404(a), 29 U.S.C. § 1104(a) (2006); and

(2)      engaging in prohibited transactions involving plan assets under ERISA Section 406, 29 U.S.C. Section 1106 (2006).

In response to Plaintiffs' claims, Defendants deny any wrongdoing and assert numerous affirmative defenses, including that: (1) Plaintiffs lack standing; (2) the claims are barred by the applicable limitations period; (3) the allegations, even if true, do not give rise to a plausible inference of wrongdoing associated with a cognizable claim; (4) Plaintiffs' claims may not be maintained as a class action for failure to satisfy all of the requirements of Fed. R. Civ. P. 23; and (5) Plaintiffs have suffered no damages.

B.      The History of the Litigation

On March 30, 2009, Plaintiff Diebold filed a Class Action Complaint in this Court alleging

that Defendants, among other things, imprudently invested client assets in connection with

Northern Trust's securities-lending program. (Dkt. 1.) The Class Action Complaint asserted claims

against Defendants for breach of fiduciary duty, breach of contract, and breach of the duty of good

faith and fair dealing. *Id.* On April 1, 2009, Plaintiff filed a corrected complaint. (Dkt. 5.) On

December 3, 2009, Plaintiffs filed an Amended Class Action Complaint, which added Hundt as an

additional named Plaintiff and again alleged that Defendants, among other things, improperly

invested assets of their clients that participated in Northern Trust's securities-lending program. (Dkt.

25-1.) The Amended Complaint also asserted claims for breach of fiduciary duty, breach of contract,

and breach of duty of good faith and fair dealing against Defendants.

From the outset of the litigation, the issues presented by Plaintiffs' allegations have been

vigorously contested through motion practice and discovery. On February 16, 2010, Defendants

moved to dismiss the Amended Complaint. (Dkt. 35.) On March 25, 2010, Plaintiffs filed their

opposition papers and, on April 15, 2010, Defendants filed their reply papers. (Dkts. 45, 54.) On

September 7, 2010, the Court issued a Memorandum Opinion and Order that granted in part and

denied in part Defendants' motion to dismiss. (Dkt. 72.) The Court specifically denied Defendants'

motion to dismiss the breach of fiduciary duty claims against the Defendants for an alleged lack of

specificity and rejected Defendants' arguments that Plaintiffs lacked standing or failed to allege

individualized losses. On November 29, 2010, Defendants filed an Answer and Affirmative

Defenses to the Amended Complaint. (Dkt. 89.) Plaintiffs responded to the affirmative defenses on

December 23, 2010. (Dkt. 92.)

Plaintiffs then sought leave to file a Second Amended Class Action Complaint on February

15, 2012, to add claims that the Defendants had breached their fiduciary duties to Plaintiffs and the

4

proposed Class by taking unreasonable fee compensation for securities-lending services and to re-assert a revised prohibited transaction claim. (Dkt. 116.) On September 10, 2012, the Court permitted Plaintiffs to file their Second Amended Complaint to assert the excessive fee claim and a revised prohibited transaction claim. (Dkt. 165.) Plaintiffs filed a revised Second Amended Complaint on October 1, 2012. (Dkt. 171.) Defendants filed their Answer and Affirmative Defenses to the Second Amended Complaint on October 31, 2012. (Dkt. 180.)

On February 27, 2012, Plaintiffs filed a Motion for Class Certification and supporting materials. (Dkt. 124.) On May 16, 2012, Defendants filed their response; Plaintiffs filed their Reply on September 26, 2012, and Defendants requested, and were permitted, to file a Sur-Reply brief on December 17, 2012. (Dkts. 152, 169, 189.) Both Plaintiffs and Defendants also filed several notifications of supplemental authority to the Court based on recent U.S. Supreme Court and Seventh Circuit decisions. (Dkts. 185, 195, 229.)

## C.    Discovery Conducted

Discovery in the Action commenced in December 2010 with the required Rule 26 discovery conference. Over the course of the following two years, the parties engaged in numerous discovery conferences and hearings. In response to Plaintiffs' discovery requests, Defendants have produced, and Plaintiffs have reviewed, hundreds of thousands of pages of documents, which include documents and written discovery responses produced in response to discovery promulgated in this action as well as documents and written discovery responses re-produced in *BP Corp. North America Inc. Savings Plan Inv. Oversight Comm. v. Northern Trust Invs.*, 08-cv-06029 (N.D. Ill.); and *FedEx Corp. v. The Northern Trust Co.,* 08-cv-02827 (W.D. Tenn.). Discovery also included several depositions of fact witnesses, including both the named Plaintiffs, a Fed. R. Civ. P. 30(b)(6) deposition of Northern Trust, consisting of depositions of two employees of Northern Trust, and two additional Northern

Trust employees. In addition, the Parties submitted expert reports and took expert depositions in connection with the Motion for Class Certification.

### D. Settlement Negotiations

The Parties first began discussing a potential resolution of this action in the spring of 2013. On May 9, 2013, a private mediation was conducted by Judge Morton Denlow (Ret.), a former federal district court judge in the United States District Court for the Northern District of Illinois. The mediation concerned not only this action but also another action pending against Defendants, *Louisiana Firefighters Retirement System v. Northern Trust Investments, N.A.*, Case No. 09-7203 (N.D. Ill) (the "Firefighters Action"), which asserts claims on behalf of non-ERISA funds with respect to Defendants' securities lending activities. At the mediation, all parties made presentations to each other and to Judge Denlow regarding the strengths and weaknesses of their respective positions. Although the parties were unable to reach a resolution at the mediation, they continued to discuss resolving this action during informal communications thereafter. On January 12, 2014, the Parties agreed in principle to resolve this action.

Thereafter, the Parties spent several months negotiating the detailed terms of the settlement of this action in coordination with the partial settlement of the Firefighters Action; prepared and executed the Stipulation of Settlement and exhibits thereto presented to the Court with the motion for preliminary approval. On March 17, 2015, the Court entered the Preliminary Approval Order ("PAO"). (Dkt. 260.)

### E. Preliminary approval, Notice and Class participation

The Court's PAO certified a class consisting of:

all entities that are governed by ERISA and that participated in Indirect Lending during the Settlement Class Period (i.e., the period beginning January 1, 2007 through and including October 31, 2010) and are alleged to have been damaged as a result of the alleged ERISA violations in this Action, including the collateral investments from their participation in Indirect Lending at issue in this Action and from fees charged to the Commingled Lending Funds at issue in this Action.

6

> Excluded from the Settlement Class are (i) entities that previously released or were
> caused to release Northern Trust from liability for alleged injury, damage, or loss
> arising from Indirect Lending during 2007-2009; (ii) Defendants and their successors,
> their respective officers and directors (former, current and future), members of the
> Immediate Families of the respective officers and directors (former, current and
> future), and the legal representatives, heirs, successors or assigns of any such
> excluded person; and (iii) entities that exclude themselves by submitting a Request
> for Exclusion that is accepted by the Court. For the sake of clarity, any Northern
> Trust plan that may have engaged in Indirect Lending is not excluded from the
> Settlement Class, but individuals and entities identified in (ii) herein shall not receive
> any individual distributions from the Net Settlement Fund.

PAO 2-3. The PAO also preliminarily approved the settlement, appointed the law firms of Bailey & Glasser LLP, Berger Montague, P.C., and Peiffer Rosca Wolf Abdullah Carr & Kane, LLC, as Co-Lead Counsel for the class, appointed Heffler Claims Group as Settlement Administrator, appointed Branch Banking and Trust Company as Escrow Agent, and approved the content, form, and manner, of notice. The parties have implemented the Court's PAO.

- First, Defendants timely sent the Banking Notice to Identified Settlement Class Members, per Paragraphs 8(a) and 9 of the PAO. Porter Dec. ¶ 3.

- Second, Defendants provided the data necessary to provide notice to the class and administer the Plan of Allocation per Paragraphs 8(a) and 8(c) of the PAO. Sincavage Dec. ¶5.

- Third, the Settlement Administrator caused class notice to be sent to members of the class on May 15, 2015, in substantially the form approved by the Court per Paragraph (8)(d) of the PAO. Sincavage Dec. ¶ 8.

- Fourth, the Settlement Administrator has been updating addresses and continues efforts to locate all identified class members. Sincavage Dec. ¶ 9-11.

- Fifth, the Settlement Administrator caused the Summary Notice to be published in substantially the form and manner approved by the Court per Paragraph (8)(e) of the PAO. Sincavage Dec. ¶12.

- Sixth, the Settlement Administrator established and maintains a website to provide information about this case and the settlement and to make available key documents. Sincavage Dec. ¶13.

Settlement Class Members had the right to make an Investment Challenge to their pro rata settlement amount. PAO ¶15. One did. Sincavage Dec. ¶14(a). The Settlement Administrator has

implemented the Investment Challenge procedures called for by the Court-approved Settlement. *Id.*
A decision on the challenge will issue after the Settlement Administrator completes its analysis. *Id.*
Parties that dispute their inclusion or exclusion from the Identified Settlement Class had the right to
make a Status Challenge. None did. Sincavage Dec. ¶14(d). Class members have the right to object
to the Settlement. To date, none have. Sincavage Dec. ¶14(b). Class members have a right to opt-out
of the Settlement. To date, none have. Sincavage Dec. ¶14(c).

As the parties informed the Court, mailing of Class Notice was delayed by three days
because of errors in the class member data supplied by Defendants. Porter Dec. ¶4. Specifically,
several Class Members were wrongly classified as class members in the Firefighters Action, and one
class member of the Firefighters Action was erroneously classified as an ERISA plan. Sincavage
Dec. ¶6. These misclassifications required Plaintiffs to recalculate the settlement proceed
percentages allocated to the various commingled Lending Funds under the Plan of Allocation as
well as to revise the tables in the Class Notice accordingly. Porter Dec. ¶4. Plaintiffs have no reason
to believe any Class Member is prejudiced by the short delay in sending notice. *Id.*

## III.   THE TERMS OF THE SETTLEMENT AGREEMENT

### A.   The Benefits to Class Members

The result of the Parties' negotiations is a Settlement Agreement providing substantial
benefit to the Class in the form of monetary relief. The monetary relief includes a cash payment to
benefit the Class in the total amount of $36 million, which was deposited into an interest-bearing
escrow account (the "Settlement Fund") on or before ten business days after Settling Plaintiffs the
provided to Northern Trust through its undersigned counsel, the information necessary to effectuate
a transfer of funds, including wiring instructions to include the bank name and ABA routing
number, account name and number, and a signed W-9 reflecting a valid taxpayer identification
number for the qualified settlement fund in which the Escrow Account has been established. *See*

Settlement Agreement, p. 23, ¶ 10. Notice and administrative costs, tax payments, an award of attorneys' fees and expenses, an award to Class Representatives, and/or any additional costs approved by the Court will be paid from the Settlement Fund. *Id.* at p. 24, ¶ 13. The remaining amount (the "Net Settlement Fund") will be distributed to members of the Class pursuant to the terms of the Settlement Agreement and the proposed Plan of Allocation, Appendix 2 to the Class Notice.

Pursuant to the terms of the Settlement Agreement, the above-described payment will be provided to Class Members who meet the class definition, without the need for submitting a claim form or other request for payment. *See* Settlement Agreement, p. 33, ¶ 32. The Settlement Agreement does not provide for a "claims made" Settlement, or for any "reversion" of the Settlement Fund to Defendants or any of their affiliates. *Id.* at 24, ¶ 12. Distributions of the Net Settlement Fund will be made according to the Plan of Allocation, based upon Defendants' records concerning the Commingled Lending Funds in which each Identified Settlement Class Member was invested on each of the Relevant Dates, the number of units held in each of the funds on each of the Relevant Dates, and the dollar value of each such unit on each of the Relevant Dates. *Id.* at 29, ¶ 20. Class Members were not required to submit claim forms to obtain a share of the Net Settlement Fund, and the Settlement Agreement provided for detailed procedures that allowed (1) retirement plans that are not among the initial list of Identified Settlement Class Members provided by Defendants to submit documentation to support membership in the Class, and (2) Class Members to submit documentation to challenge the accuracy of the data used to determine their specific distribution from the Net Settlement Fund (e.g., challenge the data as to amount in invested in a given Lending Fund on a given date). *Id.* at 41-43, ¶ 41.

There is provision for a *cy pres* award not exceeding $25,000 in the event that not all the Net Settlement Funds can be distributed to members of the Class and to prevent a reversion to Defendants. *See* (Dkt. 255, Ex 1, Ex A-3 Appendix 2, Plan of Allocation ¶ 13.)

## B. Attorney's Fees, Costs and Service Award for Plaintiffs

Class Counsel fees, costs and expenses and Plaintiffs' Incentive Awards will be paid from the Settlement Fund as the Court may so order. Class Counsel has petitioned the Court for Incentive Awards of $10,000 each in recognition of the service of Plaintiff Diebold and Plaintiff Hundt as Class representatives. Class Counsel has also petitioned the Court for an award of attorneys' fees and costs. All requests are subject to Court approval.

## C. Release of Claims

Under the terms of the Settlement Agreement, Plaintiffs and Class Members, on their own behalf; on behalf of all persons or entities on whose behalf each of the foregoing has standing to assert, in full or in part, any Settlement Class Released Claims; and on behalf of each of all of the foregoing's respective past, present, or future fiduciaries, beneficiaries, members, participants, officers, directors, boards of trustees and trustees, boards and board members, insurers, reinsurers, heirs, executors, administrators, predecessors, successors, agents, and assigns, in their capacities as such; and on behalf of any other person or entity with standing to assert, in full or in part, any Settlement Class Released Claim on behalf of any Settling Plaintiff or Settlement Class Member, in their capacities as such, will be deemed by operation of law (a) to have fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, discharged and dismissed with prejudice any and all Settlement Class Released Claims as against each and all of the Defendants' Releasees; and (b) to be forever enjoined from asserting or prosecuting any Settlement Class Released Claims as against each and all of the Defendants' Releasees. *See* Settlement Agreement at p. 22, ¶ 4.

Similarly, Defendants, on their own behalf; and on behalf of all persons or entities on whose behalf any of the Defendants has standing to assert, in full or in part, any Defendants' Released Claims; and on behalf of each of all of the foregoing's respective past, present, or future fiduciaries, beneficiaries, members, participants, affiliates, officers, directors, boards of trustees and trustees, boards and board members, insurers, reinsurers, heirs, executors, administrators, predecessors, successors, agents, and assigns, in their capacities as such; and on behalf of any other person or entity with standing to assert, in full or in part, any Defendants' Released Claim on behalf of any Defendant, in their capacities as such, shall be deemed by operation of law (a) to have fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, discharged and dismissed with prejudice any and all Defendants' Released Claims as against each and all of the Settling Plaintiffs and the other Settling Plaintiffs' Releasees; and (b) to be forever enjoined from asserting or prosecuting any Defendants' Released Claims as against each and all of the Settling Plaintiffs and the other Settling Plaintiffs' Releasees. *Id.* at pp. 22-23, ¶ 5. The full scope of the Parties' releases is set forth in the Settlement Agreement. *Id.* 22-24, ¶¶ 4-8.

## IV.     The Court Should grant final approval of the settlement.

"Federal courts naturally favor the settlement of class action litigation." *Isby*, 75 F.3d at 1196; *see also Air Line Stewards & Stewardesses Ass'n v. Trans World Airlines, Inc.*, 630 F.2d 1164, 1169 (7th Cir. 1980); *Williams v. Quinn*, 748 F. Supp. 2d 892, 897 (N.D. Ill. 2010); William B. Rubenstein et al., *Newberg on Class Actions* § 11:41 (4th ed. 2009) (hereafter "*Newberg*"). Fed. R. Civ. P. 23(e) requires judicial approval of class action settlements.

> The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

> (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

11

(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

(3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

(4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

(5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

Fed. R. Civ. P. 23(e).

To determine the fairness of a settlement, a district court:

> must, in evaluating the fairness of a settlement, consider "the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of the litigation, an evaluation of the amount of opposition to settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at the time of settlement. . . . The most important factor relevant to the fairness of a class action settlement is the first one listed: "the strength of plaintiff's case on the merits balanced against the amount offered in the settlement."

*Wilkins v. HSBC Bank Nevada, N.A.*, No. 14 C 190, 2015 WL 890566, at *4 (N.D. Ill. Feb. 27, 2015) (quoting *Synfuel Tech., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). In evaluating these factors, the court should "not focus on individual components of the settlement, but rather view them in their entirety in evaluating their fairness." *Isby*, 75 F.3d at 1199. The court also considers the facts "in the light most favorable to the settlement." *Id.*

## A. In View of the Litigation Risks, the Substantive Terms of the Settlement Are Highly Favorable to the Class.

When considered in light of the risks of continued litigation, the proposed Settlement compares favorably with the results the Class could have obtained after trial and exhaustion of appeals. The $36 million fund created for the benefit of the Class is a substantial recovery, both in the aggregate and for individual Class members. Defendants' argument that the financial crisis of

12

2008, as opposed to Defendants' allegedly imprudent investment decisions, was largely responsible for Collateral Pool losses in Lehman bonds and other instruments raises substantial barriers to proof of liability. Further, the complexity of proof on each allegedly imprudent investment would require extensive expert proof and analysis of dozens of securities. Moreover, Defendants have argued that there are no cognizable damages here notwithstanding losses in the Collateral Pools. The Settlement Fund represents a recovery of over twenty-five percent of Class Member losses on the riskiest investments and two biggest losses in the Collateral Pools, Structured Investment Vehicles.[1]

There will be no claims process and therefore no reversion of any part of the Settlement Fund to Defendants based upon the failure to make a claim. Under the Plan of Allocation proposed by Class Counsel, each Class Member will be entitled to recover its pro rata share of the Net Settlement Fund based upon such payee's Recognized Loss as compared to the total Recognized Loss of all Authorized Payees, as those terms are defined in the Settlement Agreement. *See* Settlement Agreement, ¶ 28. Although the amount Defendants have agreed to pay under the Settlement Agreement is less than the recovery sought by Plaintiffs in this action, it is well within the range of reasonableness for the settlement of a class action in which there are a number of contested issues of fact and law and a continuing controversy over the propriety of certification of the case as a class action, posing a substantial risk that Plaintiffs would not prevail on behalf of the Class at trial or that the court would not enter an order certifying the Class.

It is well settled that a proposed settlement is not to be measured against a hypothetical ideal result that might have been achieved. *See, e.g., Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("This court has aptly held that it is the very uncertainty of outcome in litigation

---

[1] The Collateral Pools lost $405 million on SIV investments. The Class Members' share of those losses was approximately $131 million.

and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators."); *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) ("The trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.'") (quoting *Milstein v. Werner*, 57 F.R.D. 515, 524-25 (S.D.N.Y. 1972).

A class settlement need not provide class members the maximum damages that would be provable after establishing liability at trial, as recovery of a fraction of that amount is reasonable, particularly in a complex and risky case such as the one at bar. Indeed, even recoveries representing a very small percentage of the defendant's maximum exposure may be found to be fair, adequate and reasonable *See, e.g., Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla.1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."); *Newbridge Networks Sec. Litig.*, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) ("an agreement that secures roughly six to twelve percent of a potential recovery ... seems to be within the targeted range of reasonableness"); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses"); *In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 581 (E.D. Pa. 2003).

Plaintiffs were also likely to confront serious risks in regard to Defendants' defenses. In particular, each Collateral Pool had distinct investment guidelines and distinct portfolios. Thus, Plaintiffs would have to prove that each Collateral Pool, standing alone, had not been prudently managed. Further, with respect to each challenged investment, Plaintiffs would have to submit proof that the investment was imprudent and offer expert opinion and damages analyses to support

14

recovery. Moreover, as noted above, the extent to which the turmoil in the financial markets caused the losses on the Collateral Pool investments would be a hotly-contested issue.

Further, the existence and measure of damages in this case would be the subject of conflicting expert reports and would be heavily disputed at trial. Defendants would no doubt present the testimony of multiple expert witnesses directly challenging the Plaintiffs' experts' opinions. Even if the Class ultimately secured a jury verdict, Defendants have demonstrated that they would certainly pursue an appeal, and success on appeal is not assured. Moreover, such an appeal likely would further delay a final resolution of this case by at least another two years.

Class Counsel took all of these considerations into account in negotiating and evaluating the fairness of the Settlement. Class Counsel determined that entering into the Settlement is in the best interests of the Class. As the case law establishes, courts should be hesitant to second-guess that determination so long as the proposed Settlement falls within a reasonable range of possible approval. Although continuing the litigation through trial and the appellate process could conceivably result in a greater recovery for the Class, the recovery offered through the Settlement is guaranteed, substantial, and not dependent on a claims process or other limitation in getting the proceeds of the Net Settlement Fund to Class Members. Under the circumstances presented in this case, and considering the substantial risks and considerable delay inherent in proceeding to trial and through the appellate process, it is likely that the Settlement Agreement for which the Plaintiffs seek this Court's approval represents the best realistic recovery for all members of the Class, and it is well within the range of possible approval. The immediacy of the recovery and the guarantee that all members of the Class will recover argue for approval of the Settlement Agreement.

**B.     The Settlement was the Result of Lengthy, Hard-Fought Litigation with substantial discovery and Arm's-Length Negotiations.**

One indication of whether a settlement is fair and reasonable is whether it is the product of serious, arm's length negotiations following hard fought litigation involving extensive discovery and

motion practice. Such a negotiation and litigation history minimizes any concerns that the Settlement Agreement might be the result of collusion among opposing parties or their counsel to undermine the interests of the class for their own benefit.

Highly experienced counsel on both sides negotiated this Settlement. Class Counsel have extensive experience in the prosecution of complex commercial and class action litigation including ERISA class actions. During the nearly five years that the case has been vigorously litigated, counsel for both sides have developed a comprehensive knowledge of the relevant facts and law by conducting extensive discovery and engaging in substantial motion practice before this Court. By the time the Settlement was reached, counsel had a thorough understanding of the complexity of the issues and the strengths and weaknesses of their respective claims, defenses and strategies. *E.g., In re Mexico Money Transfer Litig.*, 164 F. Supp.2d 1002, 1021-22 (N.D. Ill. 2000) (noting that at the time of settlement, plaintiffs' counsel had analyzed the strengths and weaknesses of available claims and "had ample opportunity to reach an informed judgment concerning the merits of the proposed settlements").

Furthermore, the Settlement was reached in good faith after fair and honest negotiations. The arms'-length negotiations took place over several months and included numerous telephonic meetings, as well as an in-person mediation session with Judge Denlow. *See Butler v. American Cable & Telephone, LLC*, No. 09 CV 5336, 2011 WL 2708399, at *8 (N.D. Ill. July 12, 2011) (approving settlement where "the parties participated in arm's length negotiations with the assistance of the Court," and citing *McKinnie v. JP Morgan Chase Bank*, 678 F. Supp.2d 806, 812 (E.D. Wis. 2009) (noting that arm's length negotiations facilitated by a neutral mediator is one factor, among others, that supports a finding that the settlement is fair)). Both sides zealously pressed their positions throughout the negotiation process, and have continued to do so even through the process of negotiating the language for their formal written agreement.

16

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue an Order granting final approval of this Settlement in substantially the same form as the proposed order submitted herewith.

Dated: June 19, 2015                       Respectfully submitted,


**BAILEY & GLASSER LLP**


Todd S. Collins                                   By: /S/ Gregory Y. Porter

Ellen Noteware                                    Gregory Y. Porter

**BERGER & MONTAGUE, P.C.**             910 17th Street, NW

1622 Locust Street                                Suite 800

Philadelphia, PA 19103                    Washington, DC  20016

Tel: (215) 875-3000                           Tel:  (202) 463-2101

Fax: (215) 875-4604                          Fax: (202) 463-2103

gporter@baileyglasser.com


Joseph C. Peiffer                                 Elizabeth Hoskins Dow

Daniel Carr                                         **BAILEY & GLASSER LLP**

**PEIFFER ROSCA WOLF**                 1003 Western Avenue

  **ABDULLAH  CARR & KANE, APLC**     Joliet, IL 60435

201 St. Charles Ave. Suite 4610          Telephone:  815-740-4034

New Orleans, LA 70170                    ldow@baileyglasser.com

Tel: (504) 523-2434

Fax: (504) 388-3912

jpeiffer@prwlegal.com

dcarr@prwlegal.com


*Counsel for Plaintiffs Joseph L. Diebold, Jr. and Paul J. Hundt*